UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
FEB 23 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-196-GWU

KEITH WALTERS, PLAINTIFF,

VS. MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Keith Walters, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of lumbar disc disease, a history of angina pectoris, obesity, atypical chest pain, and hypertension. (Tr. 22). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Walters retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, 10th grade education, and work experience as a computer technician, meat cutter, auto body repairer, and security guard could perform any jobs if he were limited to light level exertion, and also had the following additional impairments. (Tr. 20). He: (1) could not lift over five to ten pounds, although he was capable of doing "light" level standing and walking; (2) needed the option of standing

7

at 10 to 15 minute intervals and sitting at 20 to 30 minute intervals; (3) needed to be able to change positions at will; (4) could not operate foot pedals; (5) had no worse than a "moderately limited" ability to do basic work activities; and (6) could do only simple, repetitive work in a low stress environments and must avoid public contact other than that which was infrequent, brief, and casual. (Tr. 336-7). The VE responded that the plaintiff would be able to do one of his past positions, but this portion of her testimony was described as "inaudible" in the Court transcript. (Tr. 337).[1] In the alternative, the VE testified that there were other jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 337-8).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Walters alleged disability beginning June 14, 2002 due to low back pain (Tr. 73), and was awarded a closed period of disability from January, 2002 to March, 2003 in an ALJ's decision dated May 28, 2003. (Tr. 37-41). The previous ALJ found that the plaintiff had experienced improvement in his condition and had started engaging in substantial gainful activity as of March 1, 2003. (Tr. 40). The current

---

[1] The ALJ found that the plaintiff would be able to return to his past work as a security guard. (Tr. 26). Presumably, this is what the VE stated, but there is no way for the Court to determine this.

8

administrative decision concerns the period after May 28, 2003, the date of the prior decision.

Although the plaintiff testified at the administrative hearing that he had worked as a computer technician from March 8th to July 7, 2003, the ALJ in the present case determined that he did not engage in "substantial gainful activity" since the date of the prior decision, May 28, 2003. (Tr. 25). Mr. Walters testified that he was a full-time employee, but had to sit all day in a cubicle helping people to get on the Internet and and set up their e-mail, and that he could not continue because of low back pain. (Tr. 310-11, 328). His employer did not allow him to stand up. (Tr. 312). Nevertheless, his Work History Report showed that he had worked at various jobs continuously from June, 1992 to December, 2000. (Tr. 92). Mr. Walters testified that he had not been seeing a doctor recently because his medical card ran out, and although his family physician, Dr. Hoskins, had asked him to have a MRI of the lumbar spine, he was unable to drive the distance required to have the test. (Tr. 315-17). Over-the-counter Tylenol did not help his back pain, although he took 8 to 10 per day. (Tr. 332-3). They did, however, help his headaches somewhat. (Tr. 334). His other problems included chest pain, for which he took Nitroglycerin tablets and aspirin, and depression, for which Dr. Hoskins had prescribed Lexapro and Klonopin. (Tr. 319, 323, 325). No mental health treatment had been recommended. (Tr. 318). He continued to smoke cigarettes, despite his chest pain. (Tr. 321).

9

Walters

Medical records in the transcript include a consultative evaluation by Dr. Hughes Helm in August, 2002, in which the physician indicated that the plaintiff had no obvious impairments but might have problems with lifting or carrying heavy objects due to a "history" of a ruptured disc. (Tr. 110-12).[2]

During the relevant time frame after May 28, 2003, there was a consultative physical examination by Dr. Thadis Cox, conducted on August 23, 2003. Dr. Cox noted that the plaintiff reported having some lumbar spine surgery, but the actual procedure was unknown. (Tr. 206). Mr. Walters had a well-healed incision in the lumbar spine region, but had no apparent difficulty moving around the room or getting on and off examination table. He had no neurological deficits, a normal gait, and was able to squat all the way up and down without assistance. (Tr. 207-8). Forward flexion of the lumbar spine was decreased slightly to 85 degrees secondary to pain, but straight leg raising was negative. (Tr. 208). Otherwise, Mr. Walters had normal range of motion of the joints, and was able to perform fine manipulations. (Id.). He did demonstrate some decreased hearing, but the plaintiff does not allege that this was a problem. Dr. Cox found no significant evidence for any physical restriction. (Tr. 209).

---

[2] As the Court has found in other cases, Dr. Helm was not licensed to practice medicine in Kentucky until March 27, 2003. See Kentucky Board of Medical Licensure, available at http://www.state.ky.us/genericsearch/LicenseList.asp?AGY=5&TYPE=.

Records from a treating source, Dr V. Reddy, reflect complaints of lower back pain "for the last few days" in August, 2003, and the next month the physician noted a positive muscle spasms, but normal straight leg raising and equal reflexes. (Tr. 221-3). He prescribed Naprosyn, Flexeril, and hot packs, and advised the plaintiff not to lift "heavy weights." (Tr. 225). This was consistent with the ALJ's hypothetical question.

A chiropractor treated Mr. Walters from November, 2003, to February, 2004, and interpreted an x-ray of the lumbar spine as showing a surgical fusion of L5-S1, with reduced lordosis and reduced disc height at L4-L5. (Tr. 274). However, no functional restrictions were given.

Records from the Appalachian Heart Center show the plaintiff complained of chest pain "on and off" in May, 2004, along with frequent headaches and shortness of breath. (Tr. 276). An echocardiogram showed an ejection fraction of 65 percent and was considered essentially normal, while a treadmill stress echocardiogram on May 26, 2004 was entirely normal, with no evidence of reversible ischemia. (Tr. 281-2). The cardiologist, Dr. Yalamanchi, concluded that Mr. Walters was "Functional Class I by treadmill." (Tr. 281). The New York Heart Association's Functional Class I is described as meaning that an "individual has cardiac disease but no resulting limitation of physical activity; ordinary physical activity does not cause undue fatigue,

palpitation, dyspnea, or anginal pain." American Medical Association, <u>Guides to the Evaluation of Permanent Impairment</u> (Fifth Edition), p. 26.

Finally, treatment notes from Dr. Robert Hoskins, a family physician, showed that the plaintiff was seen from February to April, 2004 with complaints of depression, anxiety, headaches and low back pain. (Tr. 287-301). Dr. Hoskins recommended physical therapy and prescribed medications such as Ultracet and Celebrex, as well as a TENS unit, but did not give any specific functional limitations. On the most recent visit, the plaintiff stated that the medications were helping his mood only slightly, and Dr. Hoskins prescribed Clonazepam. (Tr. 287-8). Physically, his examination showed tenderness of the lumbar area but no loss of sensation and no reflex deficits. (Tr. 288). No functional restrictions are given.

Other than Dr. Reddy's caution not to lift heavy weights, the only indication of functional capacity comes from non-examining state agency sources. Although they did not have access to the entire record, they, too, did not indicate any functional restrictions. (Tr. 2   -4).

Although the plaintiff argues on appeal that the ALJ did not give proper weight to his treating physicians, he does not mention any specific opinion by a treating physician that would show more limitations than found by the ALJ. He also argues that the ALJ's evaluation of the plaintiff's subjective complaints of pain was inadequate, and that it was improper to draw negative inferences from Mr. Hoskins'

12

Walters

lack of medical testing and treatment, given his lack of resources. However, it is the plaintiff's burden to prove his own case, and the fact remains that the physical examinations, even by treating sources, did not suggest the dramatic limitations claimed by the plaintiff. The ALJ's evaluation of pain was adequate under the standard set out in Duncan v. Secretary Health and Human Services, 801 F.2d 847, 852-3 (6th Cir. 1986).

The decision will be affirmed.

This the 23 day of February, 2006.

G. WIX UNTHANK
SENIOR JUDGE

13